UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kenneth Hannibal Hart

   v.   Civil No. 16-cv-028-PB

Ryan Goulette et al.[1]

**REPORT AND RECOMMENDATION**

New Hampshire State Prison ("NHSP") inmate Kenneth Hart has filed a complaint (doc. no. 1) and three complaint addenda (doc.

---

[1] Defendants named in Hart's pleadings (doc. nos. 1-3 and 9), are New Hampshire Department of Corrections ("DOC") Commissioner William Wrenn, and current and former DOC employees and officers Eric Barbaro, Paul Cascio, Dionne (whose first name is unknown ("FNU")), FNU Dube, Ryan Goulette, Becky Harding, Boe Hickman, Christopher Kench, Page Kimbal, Nurse Diane (whose last name is unknown), Brendan Luba, Robert Murray, Dr. Daniel Potenza, Daniel Tanguay, Thomas Sheridan, Cpl. Roy Summers, four unnamed New Hampshire State Prison ("NHSP") dentists, an unnamed NHSP dental nurse, unnamed DOC employees, and John E. Perkins; an unnamed Merrimack County Deputy Sheriff; New Hampshire Superior Court Judge William Groff; Assistant Hillsborough County Attorney Maureen F. O'Neil; Colleen F. Gould Kinney; Manchester Police Department Detective John Morris; Hillsborough County Department of Corrections officers Andre Pucci, Sgt. FNU Cunningham, and FNU Schwartz; New Hampshire Public Defenders Office Attorney Linda Slamon; the State of New Hampshire; Attorney Timothy Arel; Paul Meurleman; the State of New York; New York Division of Criminal Justice Services ("NYDCJS") and NYDCJS Commissioner Katherine N. Lapp; Bronx County; New York County; the City of New York; Clerk of the New York Supreme Court; an unnamed arresting officer in New York City; the New York City Police Department, Precinct 44; an unnamed New York Prosecutor; and Attorney Judy White.

nos. 2, 3, and 9). These pleadings are before the court for preliminary review, pursuant to LR 4.3(d)(1) and 28 U.S.C. §§ 1915A and 1915(e)(2).

## Preliminary Review Standard

For the purposes of this court's preliminary review under 28 U.S.C. §§ 1915A, 1915(e)(2), and LR 4.3(d), the court construes pro se pleadings liberally in determining whether the plaintiff has stated a claim. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). Disregarding legal conclusions, the court considers whether the factual content in the pleading and inferences reasonably drawn therefrom, taken as true, state a claim to relief. Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## Claims

Document Nos. 1-3 in this action were originally filed in a prior lawsuit in this court, Hart v. U.S. Dep't of Treasury, No. 14-cv-421-LM. The court in that case directed the clerk's office to open this case, using those three documents as Hart's initial pleadings. This court now identifies all of the claims

Hart has asserted in Document Nos. 1-3 here, as follows:

    1.    An unnamed Merrimack County Sheriff's Department transport officer violated Hart's right to access the courts, by failing to transport Hart to a probate court hearing and failing to tell that court why Hart did not appear at the hearing on November 29, 2012.

    2.    NHSP Secure Psychiatric Unit ("SPU") Corrections Officers ("C.O.") Ryan Goulette, Cpl. Page Kimbal, and Sgt. Eric Barbaro violated Hart's right to access the courts in that, on November 29, 2012:

        A.    Goulette, Kimbal, and Barbaro seized and did not return all of Hart's legal research and a brief Hart planned to file in the New Hampshire Supreme Court;

        B.    Goulette, Kimbal, and Barbaro seized Hart's stationery supplies and did not return those supplies;

        C.    The seizure of Hart's legal work prevented Hart from completing his pleadings in <u>Hart v. U.S. Att'y Gen'l</u>, No. 12-cv-362-JL (D.N.H.); and

        D.    The seizure of Hart's legal work prevented Hart from filing a lawsuit regarding an April 2012 tasering incident.

    3.    NHSP SPU Nurse Diane, whose last name is unknown ("LNU"), violated Hart's right to access the courts, by threatening to put Hart in restraints.

    4.    SPU Capt. Paul Cascio and New Hampshire Department of Corrections ("DOC") Assistant Commissioner Christopher Kench violated Hart's right to access the courts, in that they did not return Hart's legal work to Hart that had been seized on November 29, 2012.

    5.    Becky Harding and Capt. Paul Cascio violated Hart's right to access the courts in November/December 2012 by refusing to give Hart sufficient stationery supplies, which prevented Hart from filing documents in probate court after November 29, 2012, and before December 5, 2012.

6.   SPU C.O. Robert Murray and Capt. Cascio violated Hart's right to access the courts, in that they prevented Hart from making copies of a document Hart had prepared for filing in probate court before December 5, 2012.

7.   C.O. Murray and Capt. Cascio violated Hart's right to privacy by reading the document Hart had prepared for filing in probate court.

8.   NHSP Librarian Becky Harding and others retaliated against Hart for exercising his First Amendment right to petition for redress of grievances, in that they refused to give Hart sufficient stationery supplies before December 5, 2012.

9.   SPU Capt. Cascio, C.O. Goulette, Cpl. Kimbal, and Sgt. Barbaro seized and/or did not return Hart's legal work on November 29, 2012, to retaliate against Hart for exercising his First Amendment rights: (A) in litigating a petition to terminate a guardianship over his person, In re Hart, No. 317-2002-GI-00420 (N.H. Cir. Ct., 6th Cir., Probate Div.- Concord); and (B) in preparing a lawsuit challenging the April 2012 tasering incident.

10.  In March 2014, NHSP law librarian Daniel Tanguay (A) violated Hart's right to access the courts, and (B) retaliated against Hart for exercising his First Amendment rights, by denying Hart access to six American Law Report ("ALR") articles in the possession of the state law library, that Hart requested.

11.  NHSP law librarian John Perkins has violated Hart's right to access the courts, in that: (A) Perkins has not made books available to inmates that include all federal statutes; and (B) Perkins has not provided inmates with access to case reports from other states.

12.  SPU C.O.s Barbaro and Dube, whose first name is unknown ("FNU"), tasered Hart to force him to take medication on April 15, 2012, after Hart had agreed to take the medication, thereby subjecting Hart to the use of excessive force in bad faith, in violation of Hart's Eighth

Amendment rights.

13.   DOC Hearing Officer Boe Hickman violated Hart's right to due process in the disciplinary hearing relating to the April 2012 tasering incident.

14.   Unnamed NHSP dentists and/or dental assistants violated Hart's Eighth Amendment rights in that:

>   A.   "Dentist Jane Doe" ordered and undertook the drilling and filling of a healthy tooth, intending to cause Hart pain and injury, with deliberate indifference to a substantial risk of serious harm to Hart; and
>
>   B.   Unnamed male dental providers drilled, filled, or extracted Hart's healthy teeth, and an unnamed female dental provider refused to fix Hart's partial dentures unless Hart consented to having healthy teeth drilled, and/or made improper, painful partial dentures for Hart.

15.   Defendant Wrenn is liable for violations of Hart's Eighth Amendment rights, for failing to hire competent NHSP dental care providers, and for failing to supervise the NHSP dental staff.

16.   Capt. Cascio and Assistant DOC Commissioner Kench violated Hart's right to access the courts by taking away Hart's legal work, including parts of his criminal trial records, from December 8, 2011, and then returning only part of those records to him in disarray, on June 3, 2013.

17.   NHSP Food Service Department Chef Brendan Luba, acting alone or upon the orders of an unnamed "John/Jane Doe Officer," violated Hart's rights under the First Amendment by firing Hart from a kitchen job on April 20, 2015, in retaliation for Hart's filing of <u>Hart v. U.S. Dep't of Treasury</u>, No. 14-cv-421-LM (D.N.H.), grievances, and inmate request slips.

18.   Defendants have violated Hart's Eighth Amendment rights by creating stressful circumstances which have

5

caused Hart anguish and "mental paralysis."
Hart seeks damages, a declaratory judgment, and injunctive relief on those claims, asserted in Document Nos. 1-3.

In Document No. 9, Hart asserts additional claims for damages under 42 U.S.C. § 1983.  This court identifies all of the claims asserted in Document No. 9 as follows:

> 19.  Hart's conviction was obtained in violation of his Sixth and Fourteenth Amendment rights to due process and a fair trial, in connection with (former) Superior Court Judge William Groff's judicial acts in presiding over Hart's criminal case in 2000.
>
> 20.  Deputy Hillsborough County Attorney Maureen O'Neil, engaged in prosecutorial misconduct, in 2000, in violation of Hart's Sixth and Fourteenth Amendment rights to due process and a fair trial, in that (a) Attorney O'Neil knowingly allowed the victim to testify falsely in Hart's criminal case; (b) Attorney O'Neil lied when she stated in Hart's criminal case, in response to the court's inquiry, that the state could not identify or find any state employee who witnessed Manchester Police Department ("MPD") Detective John Morris tamper with DNA samples; and (c) Attorney O'Neil allowed a guilty verdict in Hart's criminal case to stand when Hart alleges that the prosecutor was aware that the judge had dismissed the jurors and entered a guilty verdict before the jury reached a unanimous verdict.
>
> 21.  Hart's conviction was obtained in violation of Hart's Sixth and Fourteenth Amendment rights, in that MPD Detective John Morris, in 2000, (a) falsified evidence that incriminated Hart; (b) tampered with DNA evidence; (c) altered Hart's transport arrangements while Hart was a pretrial detainee; and (d) caused charges to be filed against Hart knowing that the charges were based on false allegations.
>
> 22.  Attorney Linda Slamon of the New Hampshire Public

6

Defender's Office, who was appointed to represent Hart in his criminal case, provided ineffective assistance of counsel in Hart's criminal case, in violation of Hart's Sixth and Fourteenth Amendment rights.

23. The victim in Hart's criminal case, the police investigator, court-appointed defense counsel, the prosecutor, the presiding judge, Hillsborough County Department of Corrections ("HCDC") officers, Timothy Arel (a "disbarred attorney"), DOC officers and employees, and Paul Meuleman (a "Dollar Store" employee), conspired to convict Hart wrongfully, and/or to ensure that Hart's post-conviction remedies would not be successful, in violation of Hart's Fourteenth Amendment rights to due process, a fair trial, and access to the courts.

24. HCDC C.O. Andre Pucci interfered with Hart's access to the courts in his criminal case in 2000, in violation of Hart's rights under the Fourteenth Amendment, in that, while Hart was representing himself in that criminal case without a lawyer, Pucci seized Hart's pretrial discovery and scattered Hart's legal papers in Hart's HCDC cell every night prior to Hart's criminal trial.

25. HCDC C.O. FNU Schwartz violated Hart's right to access the courts by seizing Hart's pens and pencils for three months prior to the trial in Hart's criminal case, which interfered with Hart's ability to contact stand-by counsel, and prejudiced Hart's ability to proceed without a lawyer in that case in 2000.

26. HCDC Sgt. FNU Cunningham violated Hart's right to access the courts by seizing crime scene photos Hart received through pretrial discovery, preventing Hart from preparing a defense in his criminal trial in 2000 that the photos had been fabricated.

27. The State of New York, the New York Division of Criminal Justice Services ("NYDCJS"), NYDCJS Commissioner Katherine Lapp, the Bronx and New York County, the City of New York, New York prosecutors, New York court clerks and judges, a New York Supreme Court, court-appointed defense counsel in New York, and New York police investigators

7

published false and defamatory records of convictions and arrests for Hart, rendering those New York defendants liable to Hart for defamation.

**Document Nos. 1-3 (Claims 1-18)**

I. Access to the Courts (Claims 1-6, 10(a), 11, 16)

In Claims 1-6, 10(a), 11, and 16, Hart alleges that defendants violated his right to access the courts. To state a federal constitutional claim that prison officials violated an inmate's right of access to the courts, a plaintiff must show that defendants have actually injured him, with respect to his ability to pursue a nonfrivolous claim that he has a right to litigate. See Lewis v. Casey, 518 U.S. 343, 349-52 (1996). In other words, the plaintiff must show "'that an actionable claim has been lost or rejected or that presentation of the claim is currently being prevented'" due to defendants' actions. Guglielmo v. N.H. State Prison, 111 F.3d 122, 1997 U.S. App. LEXIS 8616, at *2-*3 (1st Cir. 1997) (unpublished table decision) (citing Lewis, 518 U.S. at 356).

Hart alleges that defendants' actions of denying him access to his legal work and stationery supplies, copies, and transportation to court caused him harm in a probate court proceeding, an unspecified post-conviction proceeding in state

court, and/or in a civil action in this court. Hart further asserts that these restrictions caused a delay in his ability to file another civil rights lawsuit.

Hart has failed to allege facts that, if taken as true, would demonstrate that he was actually injured with respect to the assertion of a non-frivolous claim. To the extent Hart has alleged that he suffered injury in any of those cases, his assertions are purely conclusory. Accordingly, the district judge should dismiss Hart's access to the courts claims (Claims 1-6, 10(a), 11, and 16).

## II.  Privacy (Claim 7)

In Claim 7, Hart alleges that defendants C.O. Murray and Capt. Cascio read the contents of a probate court filing that Hart had prepared, and that their review of that document violated his right to privacy. Without more, an officer's viewing of the contents of an inmate's probate court filing does not state a federal claim of a violation of the right to privacy. Cf. Hudson v. Palmer, 468 U.S. 517, 530 (1984) ("prisoners have no legitimate expectation of privacy" in their cell and personal effects). Accordingly, Claim 7 should be dismissed.

III. <u>Retaliation Claims (Claims 8-9, 10(b), and 17)</u>

To state a claim for retaliation for the exercise of First Amendment rights, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of the prison officials; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  <u>See</u> <u>Hannon v. Beard</u>, 645 F.3d 45, 48 (1st Cir. 2011).  De minimis reactions to protected speech are not actionable.  <u>See</u> <u>Morris v. Powell</u>, 449 F.3d 682, 685-86 (5th Cir. 2006).  An adverse act is not de minimis, however, if it would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Starr v. Dube</u>, 334 F. App'x 341, 342-43 (1st Cir. 2009).

In Claim 9, Hart alleges that defendants Cascio, Goulette, Kimbal, and Barbaro, on November 29, 2012, seized, and then did not return Hart's legal work for months, to retaliate against Hart for litigating a petition to terminate a guardianship, and to retaliate against Hart for preparing a lawsuit challenging an alleged use of excessive force.  In Claim 17, Hart alleges that defendant Brendan Luba fired Hart from a kitchen job in April

10

2015, in retaliation for Hart's filing of a lawsuit, grievances, and inmate request slips, and/or that an unnamed NHSP officer spoke with Luba on the phone and orchestrated Hart's firing, with the same retaliatory motive.  The facts alleged as to Claims 9 and 17 are sufficient to state First Amendment retaliation claims.  In an Order issued this date, the court has directed service of those claims on the named defendants.

Claims 8 and 10(b) allege that defendants denied Hart access to stationery supplies for a week before December 5, 2012, and barred Hart from obtaining free copies of six ALR articles.  An inmate of ordinary firmness would not forego exercising his First Amendment rights, upon the threat that he would be unable to obtain free copies of articles from the state law library, or stationery supplies for a week or so.  Therefore, Hart has failed to state a claim regarding his lack of access to ALR articles and stationery supplies.  Accordingly, the district judge should dismiss Claims 8 and 10(b).

IV.  Due Process (Claim 13)

Hart alleges that DOC Hearings Officer Boe Hickman violated his due process rights in a disciplinary proceeding.  A prisoner is entitled to due process protections only where he alleges

that he was deprived of a constitutionally protected interest in life, liberty, or property.  See Mathews v. Eldridge, 424 U.S. 319, 332 (1976); González-Fuentes v. Molina, 607 F.3d 864, 880 n.13 (1st Cir. 2010).  Protected liberty interests, for a prisoner challenging the imposition of sanctions through disciplinary proceedings, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).  In Claim 11, Hart alleges that, as a result of a disciplinary hearing in which he was denied certain due process protections, he was sanctioned with 30 days loss of canteen, loss of condiments, loss of recreation time, extra duty, and $27.00, the cost of a replacement Taser cartridge.  These deprivations are not atypical or significant, and thus do not give rise to a due process claim upon which this court may grant relief.  See, e.g., id. at 484; Towle v. Eldridge, No. 11-cv-293-SM, 2011 U.S. Dist. LEXIS 150862 at *6, *9-*10, 2011 WL 6965471, at *2-*3 (D.N.H. Dec. 20, 2011), R&R approved by No. 11-cv-293-SM, 2012 U.S. Dist. LEXIS 2611, 2012

WL 40458 (D.N.H. Jan. 6, 2012).  Cf. Peterson v. Masse, No. 14-cv-432-LM, 2014 U.S. Dist. LEXIS 180351, at *7, 2015 WL 225446, at *3 (D.N.H. Dec. 18, 2014), R&R approved by No. 14-cv-432-LM, 2015 U.S. Dist. LEXIS 5180, 2015 WL 225446, at *1 (D.N.H. Jan. 14, 2015).  Furthermore, even if the Sandin standard were not deemed applicable to the requirement that an inmate pay for a Taser cartridge, the due process claim should be dismissed as defendants would be entitled to qualified immunity.  Cf. Peterson v. N.H. Dep't of Corr., No. 14-cv-432-LM, 2015 U.S. Dist. LEXIS 139211, at *7, 2015 WL 5968897, at *3 (D.N.H. Sep. 16, 2015) (due process claim challenging administrative fee assessed after guilty finding on prison drug charge was properly dismissed on grounds of qualified immunity, as "'there is no clearly established right for the plaintiff to receive full procedural due process protections before his prison account is debited for a . . . fee'" for a drug test (citation omitted)), R&R approved by No. 14-cv-432-LM, 2015 U.S. Dist. LEXIS 139218, 2015 WL 5968897, at *1 (D.N.H. Oct. 13, 2015).  Accordingly, the district judge should dismiss Claim 13.

V.   Excessive Force Claim (Claim 12)

Hart's allegations of an April 2012 incident of excessive

13

force, giving rise to the claim identified above as Claim 12, states a claim upon which relief can be granted. Accordingly, in the Order issued this date, the court has directed service of Claim 12 upon defendants Barbaro and Dube.

VI.  Eighth Amendment Claims (Claims 14(a)-(b), 15, and 18)

Hart asserts that his Eighth Amendment right not to be subjected to cruel and unusual punishment was violated when defendant dental care providers damaged his healthy teeth and did not provide him with proper partial dentures, and when defendants subjected him to stressful conditions, leading to his "mental paralysis."  "[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need."  Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014), cert. denied, 135 S. Ct. 2059 (2015).

Stripped of legal conclusions, Hart's allegations summarized in Claims 14(b) and 15, regarding damage to healthy teeth, the preparation of partial dentures, and Wrenn's failure to supervise the dental staff at the NHSP or hire competent

14

dentists, all fail to state a claim of a violation of Hart's Eighth Amendment rights.  As to Claim 14(a), asserting that "Dentist Jane Doe" acted with a malicious motive in damaging Hart's healthy tooth, however, Hart has stated a claim that the female dental provider's conduct manifested deliberate indifference to a substantial risk of serious harm to Hart. Accordingly, the court has directed service of Claim 14(a) in the Order issued this date, and the district judge should dismiss Claims 14(b), 15, and 18.

### Document No. 9 (Claims 19-27)

In Document No. 9, Hart asserts claims relating to his New Hampshire criminal trial in 2000, and to acts that occurred in New York prior to that state prosecution.

I.   New York Defendants (Claim 27)

Hart asserts claims against New York defendants for defaming Hart, with respect to false statements in Hart's criminal history, generated by the State of New York.  Hart unsuccessfully sought leave to amend the complaint to add essentially the same claims in Hart v. U.S. Dep't of Treasury, No. 14-cv-421-LM (D.N.H.), ECF No. 39 (Motion to Amend).  In

that case, the court denied Hart's motion to amend the complaint to add those claims on the basis that venue over those claims is improper in this court.  See id., ECF No. 43 & 47.  Hart is collaterally estopped from relitigating the same issues in this case.  Accordingly, the district judge should dismiss Claim 27 based on collateral estoppel, and because venue over his claims against the New York defendants is not proper in this court.

## II. Claims Barred by *Heck v. Humphrey*

Claims asserting violations of a criminal defendant's rights in his criminal prosecution must be dismissed if a judgment on the claim would necessarily imply that the underlying convictions or sentences are invalid, unless those convictions and sentences were previously voided through official action.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).  In Document No. 9, Hart's claims challenging alleged violations of his rights in his criminal prosecution are barred by the Heck doctrine, as those claims, if proven, would necessarily imply that Hart's 2000 state court conviction was invalid.  Because Hart's conviction has not been voided through any official action, the district judge should dismiss those claims (Claims 19-22).

III. <u>Time-Barred Claims</u>

The district judge should dismiss all of Hart's claims arising from events occurring in 2000, as time-barred. Hart asserts no facts suggesting any basis for this court to allow Hart to litigate claims that, if not barred by <u>Heck</u>, accrued more than a decade before Hart filed those claims in this court. <u>See</u> <u>Gorelik v. Costin</u>, 605 F.3d 118, 121 (1st Cir. 2010) (state's generally applicable statute of limitations for tort claims applies to § 1983 claims); <u>see also</u> N.H. Rev. Stat. Ann. § 508:4, I (three year statute of limitations period). Accordingly, the district judge should dismiss Claims 23-26, for failure to state a claim.

## Conclusion

For the foregoing reasons, the district judge should dismiss Claims 1-8, 10-11, 13, 14(b), 15-16, 18, and all of the claims asserted in Document No. 9, with the proviso that Claim 27, as identified herein, should be dismissed without prejudice to Hart's ability to refile that claim in a court of proper venue. The district judge should direct the clerk's office to

drop all defendants named by Hart, except for those upon whom the court directs service in an Order issued this date. Defendants to be dropped, upon approval of this R&R, are all defendants except for Ryan Goulette; Eric Barbaro; C.O. FNU Dube, Paul Cascio; Page Kimbal; Brendan Luba; "Dentist Jane Doe"; and the "John/Jane Doe Officer."

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).

_____
Andrea K. Johnstone
United States Magistrate Judge

July 22, 2016

cc: Kenneth Hannibal Hart, pro se