UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kenneth Hannibal Hart

    v.                                           Case No. 16-cv-028-PB

Ryan Goulette, Page Kimball,
Eric Barbaro, Paul Cascio,
Michael Dube, Dr. Linda
DeLorey, and Brendan Luba

**REPORT AND RECOMMENDATION**

Kenneth Hart, who appears pro se, is currently incarcerated in the New Hampshire State Prison ("NHSP"). Using the vehicle of 42 U.S.C. § 1983, Hart has sued: (1) Ryan Goulette, Page Kimball, Eric Barbaro, and Paul Cascio, for violating his rights under the First Amendment to the United States Constitution by withholding his legal materials in retaliation for his filing a petition in the probate court and preparing a lawsuit asserting an excessive-force claim against two corrections officers (Claim 9); (2) Barbaro and Michael Dube, for violating his rights under the Eighth Amendment by using a taser on him to force him to take medication (Claim 12); (3) Dr. Linda DeLorey, for violating his rights under the Eighth Amendment by drilling and filling a healthy tooth (Claim 14(a)); and (4) Brendan Luba, for violating his rights under the First Amendment by firing him from his job

in the prison kitchen for filing a lawsuit and various prison grievances (Claim 17).  Before this magistrate judge for a report and recommendation is an unopposed motion for summary judgment on Claims 12, 14(a), and 17, filed by defendants Barbaro, Dube, DeLorey, and Luba.  According to defendants, they are entitled to judgment as a matter of law on those claims because with respect to each of them, plaintiff has failed to satisfy the exhaustion requirement imposed by the federal Prison Litigation Reform Act ("PLRA").  For the reasons that follow, defendants' motion for partial summary judgment should be granted in part and denied in part.

## I. Summary Judgment Standard

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Walker v. President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (quoting Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011); citing Fed. R. Civ. P. 56(a)).  When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that

party's favor." Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 29 (1st Cir. 2016) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)).

## II. Background

Because defendants have invoked the PLRA exhaustion requirement, the relevant facts are those pertaining to the NHSP's grievance procedure and plaintiff's use of that procedure.

"At all times relevant to this matter, the DOC employed a three-level procedure for handling inmate grievances 'concerning any condition of confinement.'" Gray v. Perkins, No. 14-cv-386-PB, 2016 WL 5108030, at *3 (D.N.H. Sept. 20, 2016) (quoting New Hampshire Department of Corrections ("DOC") Policy and Procedure Directive ("PPD") 1.16(III)(E)). Judge Barbadoro has described the NHSP grievance procedure this way:

> To complete the first level of the DOC's grievance process, an inmate utilizes an Inmate Request Slip ("IRS") "addressed to the lowest level staff person with the authority to address the issue raised." PPD 1.16(IV)(A)(1). "A request slip regarding any issue must be received within 30 calendar days of the date on which the event complained of occurs." Id. An inmate dissatisfied with the response to an IRS may, within thirty days of the date of that response, direct a Grievance Form to the Warden or Director of the DOC facility in which the inmate is then housed. PPD 1.16(IV)(B). An inmate dissatisfied with the

> Warden's response to his grievance, within thirty days of the denial of his grievance to the Warden, may appeal that denial to the DOC Commissioner. PPD 1.16(IV)(C)(1). The timeframes set forth in PPD 1.16, and the use of appropriate forms, at each level of the DOC grievance process, are mandatory. PPD [1.16](IV)(E)&(F).

Id. at *3 (citations to the record omitted); see also Defs.' Mem. of Law, Ex. A, Hollins Decl., Attach. A-1 (doc. no. 69-3).

In support of their motion for summary judgment, defendants have produced declarations from Karin Hollins and Leslie Bartlett. Hollins is a paralegal in the Civil Bureau of the New Hampshire Attorney General's office. According to Hollins, Attachment A-4 to her declaration, which runs 1334 pages, includes copies of every IRS and Grievance Form from Hart on file at: (1) the NHSP's office of offender records; (2) the Warden's office; and (3) the office of the NHSP's Director of Medical and Forensic Services.[1] See Defs.' Mem. of Law, Ex. A, Hollins Decl. (doc. no. 69-2) ¶ 3. Bartlett is a program assistant in the office of the Commissioner of the DOC. To her

---

[1] The documents in Attachment A-4 date back to the year 2000. Given that the earliest incident at issue in this case occurred on April 15, 2012, the relevance of grievances filed before that date is unclear, and scrolling through 1334 pages of documents to determine whether the facts stated in defendants' memorandum of law are properly supported imposed a substantial burden on the court. That burden would have been minimized if defendants had exercised more discretion when selecting the documents they produced.

4

affidavit, she attached what she claims to be "true and correct copies of all grievance forms submitted to the Commissioner by Kenneth Hart beginning from April 4, 2000." Id., Ex. B, Bartlett Decl. (doc. no. 69-7) ¶ 2.

### III. Discussion

Defendants argue that they are entitled to judgment as a matter of law on three of plaintiff's four claims because as to those claims, Hart has not satisfied the PLRA exhaustion requirement. The court begins by describing that requirement and then turns to each of the three claims at issue.

### A. PLRA Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e). To exhaust the administrative remedies available to him, a prisoner must properly follow the administrative review process provided by his correctional facility. See Ross v. Blake, 136 S. Ct. 1850, 1856 (2016); Jones v. Bock, 549 U.S. 199, 218 (2007); Woodford v. Ngo, 548 U.S. 81, 93 (2006). Moreover,

because exhaustion is a prerequisite to filing suit, when a prisoner attempts to pursue an unexhausted claim in court, that claim must be dismissed.  See Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).  Finally, failure to exhaust is an affirmative defense, and to prevail on that defense at summary judgment, "the defendant must show that no reasonable jury could find that [the plaintiff] exhausted the administrative remedies available to him before commencing [his] action."  Polansky v. McCoole, No. 13-cv-458-JL, 2016 WL 237096, at *3 (D.N.H. Jan. 20, 2016).

**B.   Claim 12**

On preliminary review, the court set out Claim 12 in the following way:

> C.O.s Barbaro and Dube . . . tasered Hart to force him to take medication on April 15, 2012, after Hart had agreed to take the medication, thereby subjecting Hart to the use of excessive force in bad faith, in violation of Hart's Eighth Amendment rights.

Report and Recommendation (R. & R.) (doc. no. 11) 4-5.

Barbaro and Dube argue that they are entitled to judgment as a matter of law on Claim 12 because Hart did not fully exhaust the administrative remedies available to him for grieving the incident underlying that claim.  Specifically, they assert that while Hart filed a level-two Grievance Form with the

6

Warden, he failed to take the next step in the administrative review process by filing a level-three appeal of the Warden's unfavorable decision.  The court cannot agree that defendants have satisfied their burden of establishing that Hart failed to exhaust the administrative remedies available to him to resolve his excessive-force claim against Barbaro and Dube.

The taser incident occurred on April 15, 2012.  Hart filed a number of first-level IRS forms concerning that incident and a disciplinary proceeding that resulted from the events leading up to it.  Then, on May 6, 2012, Hart filed a second-level Grievance Form with the Warden, complaining about the taser incident.  He received an unfavorable response on May 14, 2012.

For the proposition that Hart failed to complete the administrative review process by filing a level-three appeal with the Commissioner, defendants cite the attachment to Bartlett's declaration, which, according to Bartlett, includes all the grievance materials that Hart had submitted to the Commissioner since April of 2000.  There are two problems with defendants' reliance upon Bartlett's attachment.

First, there is a significant unexplained gap in the dates of the documents included in Bartlett's attachment.  The attachment includes approximately 45 submissions from Hart.

Seventeen were submitted in 2000.  Twenty-three were submitted in 2001.  One was submitted in 2002.  One was submitted in 2010.  Two were submitted in 2014.  One was submitted in 2015.  Given Hart's generally prolific use of the prison grievance process, the court cannot be confident that the documents in Bartlett's attachment are the only submissions that Hart made to the Commissioner.

The court's lack of confidence is justified by defendants' memorandum of law.  While defendants rely upon Bartlett's attachment for the proposition that Hart never filed a level-three appeal with the Commissioner over the taser incident, they go on to state that "Mr. Hart described the Taser use as 'unconstitutional' in a grievance directed to the Commissioner . . ."  Defs.' Mem. of Law (doc. no. 69-1) 8.  However, the grievance to which defendants refer was not included in Bartlett's attachment; it was included in Attachment A-4 to Karin Hollins' declaration.  Moreover, a casual examination of Attachment A-4 reveals other grievances directed by Hart to the Commissioner that were not included in Bartlett's attachment, which she describes as including "copies of all grievance forms submitted to the Commissioner by Kenneth Hart beginning from April 4, 2000," Defs.' Mem. of Law, Ex. B. ¶ 2 (emphasis added).

8

Because defendants' memorandum of law and Hollins' Attachment A-4 both demonstrate that Bartlett's attachment does not include all of Hart's submissions to the Commissioner, the absence of documentation of a third-level appeal of the taser incident in Bartlett's attachment does not establish that Hart failed to exhaust his administrative remedies with respect to the taser incident. Accordingly, defendants are not entitled to judgment as a matter of law on Claim 12 on grounds that Hart failed to exhaust his administrative remedies.

**C.   Claim 14(a)**

On preliminary review, the court characterized Claim 14(a) as asserting that Dr. DeLorey violated Hart's Eighth Amendment rights by

> order[ing] and under[taking] the drilling and filling of a healthy tooth, intending to cause Hart pain and injury, with deliberate indifference to a substantial risk of serious harm to Hart.

R. & R. (doc. no. 11) 5.  It is undisputed that the dental treatment giving rise to Claim 14(a) took place on June 25, 2013.

DeLorey argues that she is entitled to judgment as a matter of law on Claim 14(a) because Hart did not exhaust the administrative remedies available to him with regard to his June 25, 2013, dental treatment.  Specifically, she asserts that

9

Hart: (1) did not begin grieving that matter until nearly two years after she performed the dental work at issue (and did so by filing a level-two Grievance Form rather than a level-one IRS); (2) filed his first level-one IRS on his June 2013 dental treatment in October of 2015, more than two years after she allegedly drilled and filled a healthy tooth; and (3) never filed a level-three appeal with the Commissioner.  While defendant's third argument is problematic, for the reasons outlined in the previous section, her first argument is persuasive, and dispositive.

   The dental procedure to which plaintiff objects took place on June 25, 2013.  According to PPD 1.16, an inmate wishing to grieve an incident must file an IRS that is "received within 30 calendar days of the date on which the event complained of occurred."  Defs.' Mem. of Law, Ex. A, Attach. A-1 (doc. no. 69-3) 2.  According to Karin Hollins, Attachment A-4 to her declaration includes every IRS that Hart has filed while he has been incarcerated at the NHSP.  The court has examined all 1334 pages of Attachment A-4 and has found no IRS forms that were received within 30 days after Hart underwent the dental work he now complains about.[2]  Because Hart did not file a timely IRS to

---

[2] While the court questions the completeness of the

grieve that matter, he has not properly exhausted the administrative remedies available to him.  Accordingly, DeLorey is entitled to judgment as a matter of law on Claim 14(a).  See Hanson v. N.H. State Prison Lit. Rev. Comm., No. 14-cv-132-SM, 2016 WL 4775529, at *5 (D.N.H. Aug. 17, 2016) (recommending grant of summary judgment to defendants when plaintiff did not file IRS received within 30 days of conduct underlying his lawsuit), R. & R. approved by 2016 WL 4768792 (Sept. 12, 2016).

**D.   Claim 17**

On preliminary review, the court set out Claim 17 in the following way:

> NHSP Food Service Department Chef Brendan Luba, acting alone or upon the orders of an unnamed "John/Jane Doe Officer," violated Hart's rights under the First Amendment by firing Hart from a kitchen job on April 20, 2015, in retaliation for Hart's filing of Hart v. U.S. Dep't of Treasury, No. 14-cv-421-LM (D.N.H.), grievances, and inmate request slips.

R. & R. (doc. no. 11) 5.

Luba argues that he is entitled to judgment as a matter of law on Claim 17 because Hart did not exhaust the administrative

---

attachment to Bartlett's declaration, based upon the content Hollins' Attachment A-4, the record provides no basis for questioning the completeness of Attachment A-4.  Thus, while the court cannot grant summary judgment based upon a purported failure to take the third step in the administrative review process, it harbors no concerns about granting summary judgment based upon a failure to properly execute the first step.

remedies available to him with regard to the incident underlying that claim. Specifically, he asserts that Hart failed to properly file either a level-two Grievance Form with the Warden or a level-three appeal with the Commissioner to grieve his firing from his kitchen job. While defendant's argument concerning Hart's use of the third level of the grievance process is problematic, for reasons discussed above, he is nonetheless entitled to judgment as a matter of law due to: (1) Hart's failure to file a timely level-one IRS; and (2) the fact that Hart never received a response to an IRS form that provided him with a sufficient basis for filing a level-two Grievance Form to complain about retaliation.

Hart was fired from his job in the prison kitchen on April 20, 2015. The next day, he filed a first-level IRS asking to get his job back. He claimed that he had been fired "for a bogus, false, untruthful, lying reason." Defs.' Mem. of Law, Ex. A, Attach. A-4, at 5. Then, he elaborated:

> I worked, scrubbed, cleaned that bakery every night. Now without ever a complaint they're saying it wasn't clean. A lie!! Anybody can tell clean. The bakery was cleaned.

Id. Hart received the following response from Major Jon Fouts:

> I looked into this. I am afraid that I really can't help you with this as you were not fired (RPSd) by a security staff member. You were fired by a chef. You

12

>would have to appeal that through his chain of
>command: Chef Supervisor, Kitchen Supervisor Sheehan,
>Administrator Hanson.

Id.  Plainly, Major Fouts did not address the merits of Hart's firing, much less render an unfavorable decision on a retaliation claim.

On April 27, Hart sent a first-level IRS to Todd Sheehan, asking: "Todd if Paul didn't order my being fired who did?"  Id. at 8 of 1334.  He received the following response from Paul Laflamme: "Chef II Brendan Luba placed you on RPS for poor work performance.  It wasn't ordered by anyone, including myself."  Id.  While Laflamme informed Hart of the reason for his firing, he did not render an unfavorable decision on a retaliation claim because Hart made no such claim in his IRS.

Then, on May 2, 2015, Hart sent a first-level IRS to Chef Luba that posed the following question: "I was placed on RPS for poor work performance.  If so then what work didn't I complete every night?"  Id. at 11 of 1334.  In a response that Hart received on May 13, Chef Luba stated:

>Mr. Hart you were moved from the serving line for poor
>work performance to a cooking position.  Then moved to
>the bakery cleaning position, for again poor
>performance.  In the bakery many assigned tasks were
>not completed to include cleaning/maintaining the
>walk-in cooler, sweeping/mopping of the tunnel weekly
>and other cleaning tasks.  When you feel you can
>adequately perform the tasks assigned to you please

13

feel free to re-apply.

Id. Like Major Fouts and Laflamme, Chef Luba did not render an unfavorable decision on a retaliation claim because Hart advanced no such claim in the IRS to which Chef Luba responded.

Four days before he received his response from Chef Luba, i.e., on May 9, 2015, Hart filed a five-page level-two Grievance Form with the Warden.  In it, he made the following allegations relevant to Claim 17:

> In retaliation for complaining to Administration that Dental are drilling and extracting healthy teeth . . . I was fired abruptly and mysteriously from my inmate job in the kitchen on April 20, 2015 . . . .
>
> Chef Brendan Luba who did the actual firing told both attending officers that he was given an order to fire me and that he was not directly firing me.  Two officers heard him say it.  I contend he received a phone call from Dental to fire Kenneth Hart.
>
> . . . .
>
> Can the Commissioner's office prevent any further retaliation like my being abruptly and mysteriously fired from my job . . . for complaining to Chief Dentist Dr. Dransite or this office. . . .
>
> I object to any further retaliation.  I['ve] been coincidentally fired from my year long job. . . . I was fired from my job abruptly and mysteriously on the day the IRS [was] received in Dental.

Defs.' Mem. of Law, Ex. A, Attach. A-4, at 1323-26.  On May 18, the Warden responded: "Please refer to instruction #9 on the reverse of this form.  Use IRS to request consult w/Dental to

14

address your dental concerns." Id. at 1323. Instruction #9, in turn, explains that inmates are required to seek resolution of an issue through the level-one request slip system before filing a level-two Grievance Form. See id., Attach. A-2 (doc. no. 69-5) 2.

Without going into unnecessary detail regarding the complicated procedural history of this case, the court simply notes that in June of 2015,[3] Hart asserted a claim in this court that he had been fired him from his NHSP kitchen job in retaliation for exercising his First Amendment rights. Thus, the question before the court is whether Luba has shown that "no reasonable jury could find that [Hart] had exhausted the administrative remedies available to him [to resolve his retaliation claim] before commencing [this] action [in June of 2015]." Polansky, 2016 WL 237096, at *3. No reasonable jury could so find.

To begin, it does not appear that any prison official ever

---

[3] Defendants say that "Mr. Hart filed his complaint with the court about [his] termination on June 4, 2015," Defs.' Mem. of Law (doc. no. 69-1) 5, based upon the date stamp on document no. 2. However, in a Report and Recommendation in another of Hart's cases in this court, the court determined that the filing date for Claim 17 is June 15, 2015. See Hart v. U.S. Dep't of the Treasury, No. 14-cv-421-LM, 2015 WL 9916343, at *3 (D.N.H. Nov. 20, 2015), R. & R. approved by 2016 WL 308793 (Jan. 25, 2016).

received an IRS from Hart that raised the issue of retaliation in the 30 days after Hart was fired from his kitchen job. In his April 21 IRS, Hart claimed that the reason given for his firing was a pretext, but he made no allegations about any purported "real" reason for his firing, i.e., retaliation. Hart filed additional IRS forms on April 27 and May 2. But despite Major Fouts' instruction to appeal his firing up Chef Luba's chain of command, Hart's two subsequent IRS forms are more like discovery requests propounded in anticipation of making a retaliation claim than they are actual claims by Hart that he had been the victim of retaliation. Because Hart did not make a retaliation claim in an IRS form that was received within 30 days of his firing, he did not properly exhaust the administrative remedies available to him for resolving that issue. See Defs.' Mem. of Law, Ex. A., Attach. A-1 (doc. no. 69-3) 2. That, in turn, entitles Luba to judgment as a matter of law on Claim 17. See Hanson, 2016 WL 4775529, at *5.

However, even if the court were to rule that the April 21, April 27, and May 2 IRS forms were sufficient to satisfy Hart's obligation to initiate the first level of the NHSP grievance process in a timely manner, that would not save Claim 17, because none of the responses to those IRS forms addressed the

16

issue of retaliation, which is the legal basis for Claim 17. PPD 1.16(IV)(B)(2) makes it clear that an unfavorable response to an IRS is a necessary prerequisite for filing a level-two Grievance Form. See Defs.' Mem. of Law, Ex. A, Attach. A-1 (doc. no. 69-3) 3. Here, however, when Hart filed a level-two Grievance Form that raised the issue of retaliation, on May 9, 2015, he had not yet received a response to his May 2 IRS, and neither of the responses to his two previous IRS forms can reasonably be construed as unfavorable decisions on a retaliation claim. Thus, when Hart raised the issue of retaliation in his May 9 Grievance Form, he did so de novo, not as an appeal of an unfavorable decision on that issue in a response to an IRS. Accordingly, Hart's May 9 level-two grievance was procedurally defective, as was noted by the Warden, who directed Hart to utilize the IRS process to address the concerns he had raised in his Grievance Form. So, even if the court were to give Hart credit for attempting to make a retaliation claim in the three IRS forms that preceded his May 9 Grievance Form, Luba is still entitled to judgment as a matter of law on Claim 17 on grounds that Hart failed to properly exhaust the remedies available to resolve his retaliation claim before he brought that claim in this court.

## IV. Conclusion

For the reasons detailed above, defendants' motion for partial summary judgment, document no. 69, should be granted in part as to Claims 14(a) and 17, but denied as to Claim 12. If the district judge accepts this Report and Recommendation, then moving forward, the case will consist of Claims 9 and 12, and defendants DeLorey and Luba will be dropped from the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

January 23, 2018

cc: Kenneth H. Hart, pro se
    Seth Michal Zoracki, Esq.
    Judith F. Albright, Esq.