UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kenneth Hannibal Hart

    v.                                  Civil No. 16-cv-028-PB

Ryan Goulette, Page Kimball,
Eric Barbaro, and Paul Cascio

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth Hart, who appears pro se, is currently incarcerated at the New Hampshire State Prison ("NHSP"). He claims that NHSP Secure Psychiatric Unit ("SPU") Lt. Paul Cascio,[1] Corrections Officer ("C.O.") Ryan Goulette, Cpl. Page Kimball, and Sgt. Eric Barbaro:

> seized and/or did not return Hart's legal work on November 29, 2012, to retaliate against Hart for exercising his First Amendment rights: (A) in litigating a petition to terminate a guardianship over his person . . .; and (B) in preparing a lawsuit challenging [an] April 2012 tasering incident.

July 22, 2016 Report and Recommendation (Doc. No. 11), at 3, approved by August 31, 2016 Order (Doc. No. 18). Before this magistrate judge for a report and recommendation ("R&R") is: (1) an unopposed motion for summary judgment (Doc. No. 96) filed by defendants Cascio, Goulette, Kimball, and Barbaro; and (2)

---

[1] Paul Cascio retired from the New Hampshire Department of Corrections as a captain, but at the time of the events giving rise to this suit, he was a lieutenant. See Cascio Decl. (Doc. No. 96-3) ¶¶ 1-2. For convenience and consistency with the record, the court refers to him as "Lt. Cascio."

defendant Dr. Linda DeLorey's "Motion for Entry of Final Judgment Pursuant to Rule 54(b)" (Doc. No. 95).[2]  For the reasons that follow, the district judge should grant defendants' motion for summary judgment and, as a consequence, the district judge should deny, as moot, Dr. DeLorey's Rule 54(b) motion.

I.   Defendants' Motion for Summary Judgment (Doc. No. 96)

  A.   Summary Judgment Standard

"The purpose of summary judgment is to enable a court 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Fernández-Salicrup v. Figueroa-Sancha, 790 F.3d 312, 328 (1st Cir. 2015) (citations omitted).  Summary judgment is appropriate "where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Sepúlveda-Vargas v. Caribbean Rests., LLC, 888 F.3d 549, 553 (1st Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  At summary judgment, "[a]n issue is 'genuine' if the evidence would enable a reasonable factfinder to decide the issue in favor of either party."  Irobe v. U.S. Dep't of Agric., 890 F.3d 371, 377 (1st Cir. 2018).  "A fact is

---

[2]All of the claims asserted against defendant Linda DeLorey have been dismissed from this case.  See Mar. 13, 2018 Order (Doc. No. 94) (approving Feb. 23, 2018 R&R (Doc. No. 90)).

2

'material' when its (non)existence could change a case's outcome." Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 5 (1st Cir. 2018).  When ruling on a motion for summary judgment, the court must "construe the record in the light most favorable to the non-movant, resolving all reasonable inferences in that party's favor." Sepúlveda-Vargas, 888 F.3d at 553.

B. Background[3]

At all times relevant to this matter, Hart was being held in the SPU.  On November 29, 2012, Hart was scheduled to appear in court in the New Hampshire Circuit Court, Sixth Circuit, Probate Division, in Concord, for a hearing on a petition he had filed to terminate a guardianship over his person.  Hart has asserted that SPU officers had a motive to interfere with that petition, as "[t]he issue before the [state] court concerned the future authority of the S.P.U. officers over [him]," Compl. (Doc. No. 1), at 9.

On November 29, 2012, C.O. Goulette and Cpl. Kimball went to Hart's cell to prepare him for transport.  When the officers went into Hart's cell, they discovered unsanitary conditions, including trash and open containers of urine.  Barbaro Decl. ¶ 5 (Doc. 96-2); Goulette Decl. ¶ 6 (Doc. No. 96-4); Kimball Decl.

---

[3]Unless otherwise indicated, the facts recited in this section are undisputed.

¶ 6 (Doc. No. 96-5).  Barbaro decided to move Hart to a different cell.  Barbaro Decl. (Doc. 96-2) ¶¶ 7-8.  Hart was handcuffed and moved into the corridor, and Hart's old cell was searched.  Id. ¶¶ 5-6.  The sheriff who had arrived to transport Hart to court eventually cancelled the transport.  See id. ¶ 6.

Goulette, Kimball, and Barbaro all describe the search of Hart's old cell in their declarations as having been conducted by SPU staff.  Kimball expressly denied participating in the initial search and trash removal, as he stood with Hart outside of the cell at that time.  Kimball Decl. ¶ 7.  Barbaro stated that all of Hart's authorized property, including his legal material, was transferred from Hart's old cell to his new one.  Barbaro Decl. ¶ 7.  Goulette, Kimball, and Barbaro all expressly denied looking at any of Hart's legal material or taking any of it from Hart's cell.  Barbaro Decl. ¶¶ 3, 9 (Doc. No. 96-2); Goulette Decl. ¶¶ 3, 8 (Doc. No. 96-4); Kimball Decl. ¶¶ 3, 9.

In his verified complaint,[4] plaintiff stated that, on November 29, defendants Goulette, Kimball, and Barbaro seized his legal material, and that Lt. Cascio ordered the seizure of

---

[4] A "verified complaint is 'treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e).'"  Bersaw v. Northland Grp., No. 14-cv-128-JL, 2015 DNH 50, 2015 U.S. Dist. LEXIS 29790, at *3 n.2, 2015 WL 1097402, at *1 n.2 (D.N.H. Mar. 11, 2005) (quoting Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991)).

4

the legal material and then failed to give it back.  See Compl. (Doc. No. 1), at 8-9.  Hart further alleged that while Hart was holding a bag full of legal material, Barbaro snatched the bag, told him that he would not be leaving the cell with his legal material, but also told him that his legal material would be returned to him once it was searched.  Id. at 8.  Hart asserted that Goulette and Kimball also told him he would get his property back.  See id.  Hart described the incident somewhat differently in his deposition, testifying that he never saw any of the defendants actually seize his legal materials.  See Hart Dep. 37:2-4 (Doc. No. 96-7, at 9).  Cascio's declaration states that he "had no knowledge of any legal materials being seized from Inmate Hart or from his cell on November 29, 2012."  Cascio Decl. ¶ 3 (Doc. No. 96-3).

Hart alleged in the verified complaint that the officers seized his legal material: (1) to prevent him from prevailing in his pending litigation; (2) in retaliation for petitioning to terminate his guardianship; and (3) in retaliation for preparing a lawsuit arising out of an April 2012 tasering incident.  See Compl. (Doc. No. 1), at 9, 32.  In his deposition, however, Hart answered, "Yes," when asked if, at the end of the day, it was "your speculation," that the taking of his legal work was a retaliatory act.  Hart Dep. 26:18-22 (Doc. No. 96-7, at 5).

Goulette and Kimball stated, in their declarations, that on

5

November 29, they did not know which court Hart was being transported to.  Goulette Decl. ¶ 4 (Doc. No. 96-4); Kimball Decl. ¶ 4 (Doc. No. 96-5).  All four defendants have stated in declarations, that on November 29, they did not know that Hart had filed a petition to terminate his guardianship.  Goulette Decl. ¶¶ 3, 8 (Doc. No. 96-4); Kimball Decl. ¶¶ 3, 9 (Doc. No. 96-5); Barbaro ¶¶ 3, 9 (Doc. No. 96-2); Cascio Decl. ¶ 5 (Doc. No. 96-3).  Hart testified at his deposition that defendants knew where he was going on November 29 because of the "transport order."  Hart Dep. 59:17-23 (Doc. No. 96-7, at 16).  When asked whether Hart had information indicating that defendants knew why he was going to court on that day, Hart answered that "[t]he entire SPU staff knew I was petitioning to terminate the guardianship . . . [t]hrough the psychiatrist and the social worker."  Hart Dep. 60:3-6 (Doc. No. 96-7, at 17).

The verified complaint further alleges that in the days after November 29, Hart prepared three pages of motions for filing in his guardianship petition, which Lt. Cascio read.  Compl. (Doc. No. 1) ¶ 10, at 21.  After Hart told Cascio that the papers requested a continuance in a pending pro se court case, Cascio refused Hart's request for the return of the legal property that had been taken from his cell, explaining that it had been taken because it was "'too much'" and a "'fire hazard.'"  Id.

6

As to Hart's claim that the officers seized his legal materials in retaliation for his preparing a lawsuit based on the April 2012 tasering incident, Hart testified in his deposition that he filed that lawsuit in 2015.  See Hart Dep. 61:23 (Doc. No. 96-7, at 18).  Hart's verified complaint states that his seized legal materials included a completed complaint, naming Barbaro as one of the defendants, along with draft discovery requests and exhibits relating to the April 2012 tasering incident.  See Compl. (Doc. No. 1) ¶ 9, at 32.  All four defendant officers have asserted in their declarations, however, that on November 29 they did not know that plaintiff had prepared a lawsuit resulting from the April 2012 tasering incident.  See Goulette Decl. ¶¶ 3, 8 (Doc. No. 96-4); Kimball Decl. ¶¶ 3, 9 (Doc. No. 96-5); Barbaro ¶¶ 3, 9 (Doc. No. 96-2); Cascio Decl. ¶ 5 (Doc. No. 96-3).

  C. First Amendment Retaliation Standard

"[I]n order to survive summary judgment on a retaliation claim, a prisoner must make out a prima facie case by adducing facts sufficient to show that he engaged in a protected activity, that the state took an adverse action against him, and that there is a causal link between the former and the latter." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "[C]ourts must insist that such claims are bound up in facts, not . . .

7

speculation and surmise." Id.  Defendants argue that plaintiff has failed to establish a prima facie case of retaliation based on either his litigation of the petition to terminate the guardianship or preparation of a case on the tasering incident.

               1.    Petition to Terminate Guardianship

Defendants argue that there is no evidence in the record to establish the causation element of a retaliation claim.  In this regard, plaintiff points to the date of the alleged seizure of those materials (i.e., the same day Hart was scheduled to be transported to a hearing on his petition to terminate the guardianship).  To draw an inference of a causal link based on temporal proximity, however, there must be proof that the decision maker knew of the plaintiff's protected conduct when he or she decided to take the adverse action.  See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (Title VII employment discrimination case).

With respect to defendants' knowledge that Hart had petitioned to terminate his guardianship, the record includes: (1) declarations from all four defendants in which they stated that they did not know that Hart had filed a petition to terminate his guardianship; (2) Hart's deposition testimony that all four defendants knew which court he was going to, because of the transport order; (3) Hart's deposition testimony that all

four defendants knew why he was going to that court, "[t]hrough the [SPU] psychiatrist and . . . social worker," Hart Dep. 60:6 (Doc. 96-7, at 17); and (4) Hart's allegations, in the verified complaint, that on a date after the seizure of Hart's legal materials, Cascio denied Hart's request to have his "legal property" returned, after Cascio had read draft motions Hart planned to file in the guardianship proceeding to obtain a continuance or rescheduling of the November 29 hearing.

Plaintiff offers no evidence suggesting that any defendant knew of the existence of petition to terminate the guardianship at the time the officers are alleged to have seized his legal materials.  Although plaintiff points to the existence of the transport order, the record lacks any evidence as to: (1) what information is included in the transport order; and (2) whether any of the four defendants in this case ever saw the transport order.  With respect to the psychiatrist and the social worker, the record does not contain any evidence of what those individuals may have said to any of the defendants about Hart's petition.  If presented with the evidence in the record, no reasonable jury could find that the defendants knew about Hart's petition to terminate his guardianship at the time of the alleged seizure of his materials.  See Irobe, 890 F.3d at 377.

As to Cascio's alleged reading of motions that Hart planned to file in his guardianship proceeding to continue the hearing

9

he missed, Hart has not presented sufficient evidence regarding the contents of those motions to allow a reasonable factfinder to infer that Cascio knew of the pending petition to terminate the guardianship, either at the time of the seizure of the legal materials or, after reading the motions, when Hart has alleged he refused Hart's request to return his legal property. Even if this court were to find that there is a genuine issue of fact as to whether Cascio knew of the existence of the petition to terminate the guardianship before refusing Hart's request to return his legal property, such evidence by itself would not give rise to a triable issue of causality, particularly where the "larger sequence of events" undercuts a claim of causation. Soileau v. Guilford of Me., Inc., 105 F.3d 12, 16 (1st Cir. 1997). Hart alleges that Cascio said that the legal materials had been seized because they were "too much" and presented a "fire hazard"; such reasons would apply equally to a decision not to return the materials. On the record before the court, no reasonable jury could conclude that Hart's legal materials were seized and withheld in retaliation for Hart's litigation of a petition to terminate his guardianship. Accordingly, the district judge should grant defendants' motion for summary judgment (Doc. No. 96) on the retaliation claim relating to the petition to terminate Hart's guardianship.

## 2. April 2012 Tasering Lawsuit

Defendants further argue that plaintiff has not adduced sufficient facts to establish the causation element as to his claim that the seizure of legal materials was undertaken in retaliation for his preparation of a lawsuit challenging the April 2012 tasering incident. With respect to defendants' knowledge of that lawsuit, the <u>only</u> evidence in the record is in the officers' declarations, in which each of them stated that he did not know that plaintiff had prepared a lawsuit resulting from the tasering incident. Although there are statements in the verified complaint indicating that the seized legal materials included a completed complaint, naming a number of defendants, including Barbaro, concerning the tasering incident, there is no evidence in the record that Barbaro or any other defendant read any of the materials relating to that incident that Hart alleges officers seized from his cell, or that they were otherwise aware that Hart had prepared a complaint based on the tasering incident. No reasonable jury could find, based on the record presently before the court, that any of the four defendants knew that plaintiff was preparing to file a lawsuit concerning the tasering incident. Accordingly, defendants' motion for summary judgment (Doc. No. 96) on the retaliation claim relating to the tasering lawsuit should be granted.

II. <u>Motion for Judgment under Rule 54(b) (Doc. No. 95)</u>

Defendant Dr. Linda DeLorey has moved, under Fed. R. Civ. P. 54(b), for entry of judgment on the claims against her that were resolved in her favor when her motion for summary judgment was granted. <u>See</u> Mar. 13, 2018 Order (Doc. No. 94) (approving Feb. 23, 2018 R&R (Doc. No. 90)). Rule 54(b) allows the court, under certain circumstances, to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties." Fed. R. Civ. P. 54(b). "Rule 54(b) should be employed with great circumspection, as "piecemeal appeals are disfavored." <u>González Figueroa v. J.C. Penney P.R.</u>, Inc., 568 F.3d 313, 318 n.3 (1st Cir. 2009).

This R&R recommends that the district judge grant a summary judgment motion as to all of the claims remaining in this action. The district judge's approval of this R&R, granting that motion, would allow the clerk to enter judgment as to the entire case, effectively mooting the Rule 54(b) motion. Accordingly, in approving this R&R, the district judge should deny Dr. DeLorey's Rule 54(b) motion (Doc. No. 95) as moot.

### Conclusion

For the reasons detailed above, the district judge should grant defendants' motion for summary judgment (Doc. No. 96), direct the clerk to enter judgment, and deny, as moot, Dr. Linda

DeLorey's Rule 54(b) motion (Doc. No. 95). Any objection to this report and recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file a specific written objection to this report and recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                                            Andrea K. Johnstone
                                                                            United States Magistrate Judge

August 7, 2018

cc:   Kenneth H. Hart, pro se
       Jonathan A. Lax, Esq.
       Seth Michael Zoracki, Esq.